IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

MANCHESTER FARMS, INC.,          *

     Plaintiff,                 *

vs.                              *

                            CASE NO. 3:14-CV-44 (CDL)

SUPREMAS, INC. f/d/b/a CAL       *
WESTERN BEEF,
                            *

     Defendant.                 *

_____

O R D E R

Supremas, Inc. sells quail to grocery stores. At one time, Manchester Farms, Inc. supplied Supremas with its quail. But that relationship fell apart and Supremas began getting quail from another supplier. Supremas continued to mark its quail with a Manchester Farms Universal Purchasing Code ("UPC"), even though it purchased quail from another supplier. Manchester Farms accuses Supremas of falsely representing to consumers that Supremas's quail came from Manchester Farms. Manchester Farms sues Supremas for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a). Manchester Farms also brings state law claims for unjust enrichment, conspiracy, and libel. Presently pending before the Court is Supremas's motion for summary judgment. For the reasons discussed in the remainder of this order, the Court denies Supremas's motion as to the Lanham

Act claim and unjust enrichment claim and grants summary judgment as to the remaining claims.  (ECF No. 48).

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Manchester Farms, the record reveals the following.

Supremas is a California company that sells meat to grocery stores.  Supremas started selling quail in the mid-1990s, and it purchased its quail from Manchester Farms.  Supremas sold four-packs of Manchester Farms' quail under a private label, which means that the quail was sold in a package labeled "Supremas" rather than "Manchester Farms."  Supremas sells most of its meat

using a private label because its brand name is widely recognized by the Hispanic population in southern California. To sell the quail under a private label, Supremas and Manchester Farms created a UPC to put on the quail packaging. A UPC is a string of numbers that identifies, among other things, the source of the product. Therefore, the UPC that Manchester Farms created for Supremas identifies Manchester Farms as the supplier of the quail. For the next year or two, Supremas sold quail from Manchester Farms under Supremas's private label.

The relationship between Supremas and Manchester Farms eventually soured. The parties disagree about the cause of the breakup. Manchester Farms contends that Supremas stopped buying quail from Manchester Farms because Manchester Farms increased its prices. But according to Supremas, Manchester Farms abruptly stopped delivering quail to Supremas for no reason. Supremas co-founder Bill Hall testified that he was "stunned" by Manchester Farms' behavior. Def.'s Mot. For Summ. J. Ex. 4, Hall Dep. 30:23-31:3, ECF No. 48-4.

Supremas began looking for a new quail supplier. It entered into an agreement to buy quail from Quail International, a Georgia company with its principal place of business in Georgia. Quail International's birds are slaughtered in Georgia and inspected by Georgia agricultural authorities. Supremas sold Quail International's birds under Supremas's private label,

just like it had done with Manchester Farms. Supremas co-founder Bill Hall testified that he told grocery stores about the change in suppliers, but Manchester Farms disputes this fact. *Id.* at 42:21-43:10, 61:20-62:3. Importantly, Supremas continued to label the quail with Manchester Farms' UPC, even though it was now selling quail from Quail International. Thus, the packaging continued to represent that the birds came from Manchester Farms long after Manchester Farms stopped supplying Supremas with birds. Manchester Farms never gave Supremas permission to continue using the UPC bearing its name. But Supremas used it anyway. Hall testified that he and his co-founder Joe Dempsey had "no idea what bar codes did," and that they thought they had the right to continue using the UPC. *Id.* at 54:2-6.

In 2003, Supremas began selling four-packs of quail to Kroger (also d/b/a "Food 4 Less"). At the time, Manchester Farms was also selling quail to Kroger. Supremas completed a new item form when it began selling to Kroger. On that form, Supremas described its product as "Manchester Farms GS Quail Tray"—even though Supremas had not carried Manchester Farms' quail for more than five years. Based on this false representation, Kroger's database reflected that Supremas's quail came from "MFRM," which is an abbreviation for Manchester Farms. Every purchase order that Kroger sent to Supremas from

2003 until 2014 specifically requested Manchester Farms' quail. And every package of quail that Supremas sent Kroger was marked with a UPC that wrongly identified Manchester Farms as the supplier of the birds. Manchester Farms contends that Supremas was intentionally passing off its quail as if the quail came from Manchester Farms.

Manchester Farms also contends that Kroger was confused about the source of Supremas's quail. Jill Needom, a buyer for Kroger, testified that she thought Kroger was ordering quail from Manchester Farms. Supremas, however, contends that Kroger did not care about the source of the quail. Kroger's meat merchandiser, Kirk Hayhurst, testified that Kroger never asked Supremas about the source of its quail. Def.'s Mot. For Summ. J. Ex. 7, Hayhurst Dep. 10:16-25, ECF No. 48-7. Hayhurst also said that he did not care about the source of Supremas's quail. *Id.*

Manchester Farms realized that Supremas was misusing the UPC in April 2014—approximately fifteen years after Manchester Farms had stopped selling quail to Supremas. This misrepresentation came to light when Kroger did a database overhaul and informed Manchester Farms that Supremas was using a Manchester Farms UPC in connection with selling quail. Shortly thereafter, Manchester Farms sent Supremas a cease and desist letter. Hall, a co-founder of Supremas, testified that he

thought the letter was "absolutely frivolous" because Supremas "did not knowingly or intentionally use that bar code. We thought it was our bar code." Hall Dep. 89:6-11.

Supremas then took some steps to correct the error. Supremas created a new UPC indicating that the quail came from Quail International. It also notified grocery stores about the misrepresentation and destroyed all quail marked with the incorrect UPC. Supremas also contends that it took back any wrongly marked quail remaining on grocery store shelves. Manchester Farms, however, disputes that Supremas did these things. Manchester Farms asserts that Supremas made more than three hundred shipments of quail labeled with the wrong UPC *after* it received a cease and desist letter. Manchester Farms also contends that Supremas did not take back mismarked quail remaining on grocery store shelves until after this Court entered a preliminary injunction.

Manchester Farms asserts that its birds are better than Quail International's birds. Manchester Farms gives its quail high-quality starter feed, does not use antibiotics or growth hormones, and waits until the birds are forty days old to slaughter them. Quail International does not follow these practices. According to Manchester Farms, its reputation has been injured by Supremas's representation that the quail it purchased from Quail International came from Manchester Farms.

6

DISCUSSION

**I.  Personal Jurisdiction**

Supremas contends that it is not subject to personal jurisdiction in this Court.  The Court finds that Supremas has waived its personal jurisdiction defense.  And even if Supremas had not waived its defense, Supremas would still be subject to the jurisdiction of this Court based on Georgia's long-arm statute.

> **A.**  Supremas Has Waived the Defense of Lack of Personal Jurisdiction

A defendant may waive personal jurisdiction.  *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("[B]oth [personal jurisdiction and venue] are personal privileges of the defendant . . . and both may be waived by the parties.").  Supremas raised the defense of lack of personal jurisdiction in its answer.  But it then consented to a preliminary injunction that barred Supremas from using Manchester Farms' UPC in conjunction with selling quail.  When Supremas consented to the injunction, it "voluntarily acknowledged and acquiesced to the district court's authority to control [its] conduct."  *Aeration Sols. Inc. v. Dickman*, 85 F. App'x 772, 774-75 (Fed. Cir. 2004).  Supremas did not reserve its right to contest jurisdiction when it consented to the injunction.  Nor would such a reservation make any sense—without jurisdiction over Supremas, the Court

would be powerless to enforce the injunction and the injunction would be effectively meaningless. For that reason, "few actions [can] more clearly signal an acceptance of a court's jurisdiction than [consenting to an] injunction order." *Id.* at 775.

B. Even Without Waiver, the Court Has Jurisdiction over Supremas

Even if Supremas's actions do not amount to waiver, Supremas may nonetheless be haled into court in Georgia. To determine whether Supremas is subject to personal jurisdiction in Georgia, the Court engages in a two-step analysis. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). First, the Georgia long-arm statute must permit the Court to exercise jurisdiction over Supremas. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). If the long-arm statute confers jurisdiction, then the Court must evaluate whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Diamond Crystal Brands*, 593 F.3d at 1258-59 (explaining that the Georgia long-arm statute is not coextensive with the Due Process Clause).

1. *Georgia's Long Arm Statute*

Manchester Farms relies on subsection (1) of the Georgia long-arm statute for jurisdiction. Subsection (1) provides that

8

a Georgia court may exercise jurisdiction over an out-of-state defendant that "[t]ransacts any business" in Georgia.   O.C.G.A. § 9-10-91(1).   The Georgia Supreme Court has instructed courts applying the long-arm statute to interpret the term "transacts any business" literally.   *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 675, 620 S.E.2d 352, 355 (2005); *see also Diamond Crystal Brands*, 593 F.3d at 1263.   The Eleventh Circuit defines "transacts any business" as "the doing of some act or consummation of some transaction."   *Diamond Crystal Brands,* 593 F.3d at 1260. Supremas "need not physically enter the state" to transact business in Georgia.   *Id.* at 1264.

Supremas purchased over $9 million worth of Georgia quail from a Georgia company (Quail International) for over fifteen years.   Supremas also hired Quail International to create a private label for Supremas's products, and Quail International created that label in Georgia.   The Court finds that Supremas has transacted business in Georgia.   The Court therefore has jurisdiction over Supremas pursuant to subsection (1) of Georgia's long-arm statute.

## 2.   *Constitutional Due Process*

Next, the Court considers whether its assertion of jurisdiction over Supremas offends Supremas's due process rights.   To comply with due process, Supremas must have "certain

9

minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "Once this showing is made, a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands,* 593 F.3d at 1267 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The Court finds that Supremas maintains sufficient contacts with Georgia.  Supremas has purposefully reached out to Georgia by buying a substantial amount of Georgia quail from a Georgia company.  *See id.* at 1270 (concluding that defendant's fourteen transactions with a  Georgia company were sufficient minimum contacts for personal jurisdiction).  Additionally, this lawsuit relates to Supremas's contacts with Georgia.  Manchester Farms sues Supremas for misrepresenting that the Quail International birds (which were raised and prepared in Georgia) came from Manchester Farms.  Supremas gave Quail International a Manchester Farms UPC to mark its products, and Manchester Farms is suing for the misuse of that UPC.  Thus, Supremas "should reasonably anticipate being haled into court []here." *Oldfield*,

558 F.3d at 1221 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Because Supremas maintains sufficient contacts with Georgia, the burden shifts to Supremas to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477. Supremas fails to carry that burden. Supremas's brief, which devotes only two short paragraphs to its personal jurisdiction defense, does not argue that the exercise of jurisdiction would violate principles of fair play or substantial justice.

Based on the foregoing, it is clear that this Court may exercise personal jurisdiction over Supremas even if Supremas has not waived its personal jurisdiction defense. Supremas's motion for summary judgment based on lack of personal jurisdiction is denied.

## II. False Designation of Origin

Manchester Farms brings a claim under the Lanham Act for false designation of origin. The Lanham Act prohibits a person from using in interstate commerce "any false designation of origin . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person." 15 U.S.C. § 1125(a)(1)(A). To prevail on a false designation of origin claim under the Lanham Act, a plaintiff must show: (1) that that the defendant falsely

11

designated the origin of its product using the plaintiff's designation of origin, and (2) that the defendant's use of the designation of origin was likely to cause consumer confusion. *See Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010). The first element is not at issue here. The parties agree that Supremas used a UPC designating Manchester Farms as the supplier of its quail.[1] Thus, the only contested issue is whether Supremas's use of Manchester Farms' UPC was likely to cause consumer confusion regarding the origin of Supremas's quail.

To determine whether Supremas's alleged false designation of origin created a likelihood of confusion, the Court looks at the following factors: (1) similarity between the goods that use the same designation of origin; (2) similarity of the actual sales methods used by plaintiff and defendant with regard to the goods that have allegedly been falsely designated as to their origin; (3) "intent of the alleged infringer to misappropriate the proprietor's good will;" and (4) "the existence and extent of actual confusion in the consuming public." *Id.* at 774-75.[2]

---

[1] A claim for false designation of origin arises under the Lanham Act whenever a person uses "any word, term, name, symbol," device, "or any false designation of origin" that is likely to cause consumer confusion. 15 U.S.C. § 1125(a)(1). Here, Manchester Farms alleges that Supremas violated the Lanham Act by using a UPC code, which indicated that Supremas's birds came from Manchester Farms.

[2] "The factors relevant to establishing [a likelihood of confusion with respect to false designation of origin under 15 U.S.C. § 1125(a)] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. §

A district court cannot determine that there is a likelihood of confusion by "merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists.  Rather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986).

Manchester Farms' main contention in support of its Lanham Act claim is that Supremas used Manchester Farms' UPC to deceive customers into believing that they were buying birds from Manchester Farms.  For the following reasons, the Court finds that a genuine factual dispute exists regarding the likelihood of consumer confusion.  Therefore, Supremas is not entitled to summary judgment on Manchester Farms' false designation of origin claim.

A.   Similarity of the Products

If the products sold by the competing companies are very similar, then that is evidence tending to prove a likelihood of consumer confusion.  *Ambrit*, 812 F.2d at 1541.  The Court finds

---

1114." *Id.* at 773 n.5 (alteration in original) (quoting *Ross Bicycles Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1503-04 (11th Cir. 1985)). Not all of the "likelihood of confusion factors" for a trademark infringement action apply to this dispute.  For example, the "strength of the mark" and "similarity of the mark" factors would apply in a traditional trademark infringement action.  But they are inapplicable here since this dispute does not involve two competing marks. Therefore, the Court only applies those factors that are relevant under the circumstances presented here.

that the products sold by Supremas and Manchester Farms are nearly identical: both sell quail.  Thus, this factor weighs in favor of finding a likelihood of confusion for purposes of summary judgment.

B.   Similarity of Sales Methods

"Likelihood of confusion is more probable if the products are sold through the same channels to the same purchasers."  *Id.*  "This factor takes into consideration where, how, and to whom the parties' products are sold."  *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1339 (11th Cir. 1999). Both Supremas and Manchester Farms sell products through the same channels: grocery stores.  In fact, both companies have sold to Kroger at the same time.  Thus, this factor weighs in favor of finding a likelihood of confusion.

C.   Intent of the Alleged Infringer

"If it can be shown that a defendant [falsely used a plaintiff's designation of origin] with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity."  *Id.* at 1340.  Manchester Farms contends that Supremas intentionally represented that its birds came from Manchester Farms.  To support this assertion, Manchester Farms presents evidence that after Manchester Farms stopped supplying quail to Supremas, Supremas created a new UPC

14

identifying Manchester Farms as the supplier of the birds. Supremas gave the new UPC to Quail International to use on its master cases of quail. Manchester Farms also presents evidence that Supremas described its product to Kroger as "Manchester Farms GS Quail Tray"—even though more than five years had passed since Supremas had purchased quail from Manchester Farms. And Supremas filled purchase orders from Kroger that specifically requested Manchester Farms' quail for over ten years. Finally, Manchester Farms presents evidence of Supremas sending over 300 shipments of quail marked with the Manchester Farms UPC *after* Manchester Farms sent Supremas a cease and desist letter. According to Manchester Farms, this evidence proves that Supremas did not innocently fail to update its UPC after it switched suppliers, but intentionally misrepresented that Manchester Farms supplied its birds.

Supremas, however, insists that its use of the Manchester Farms UPC was an innocent mistake. Supremas co-founders Dempsey and Hall testified that they had no understanding of how UPCs worked. The co-founders also had no idea that Manchester Farms' UPC identified Manchester Farms as the source of the quail. Finally, according to Supremas CEO Dempsey, Supremas quickly corrected its error—it changed its UPC, notified its customers of the error, and discarded quail labeled with the wrong UPC.

15

The Court finds that a genuine factual dispute exists as to whether Supremas intentionally misused Manchester Farms' designation of origin. Thus, this factor weighs in favor of denying summary judgment.

D.   Actual Confusion

"The last factor, actual confusion in the consuming public, is the most persuasive evidence in assessing likelihood of confusion." *Tana*, 611 F.3d at 779. But it "is not a prerequisite." *Frehling*, 192 F.3d at 1340. Manchester Farms presents evidence that Kroger believed Supremas was selling quail from Manchester Farms. According to the testimony of Kroger's buyer, Jill Needom, Kroger was under the impression that Supremas's quail came from Manchester Farms. Kroger did not realize that Supremas's quail came from another source until it overhauled its database approximately eleven years later.

In response, Supremas argues that Kroger did not care about the source of Supremas's quail. Supremas points to the testimony of Hayhurst, a meat merchandiser for Kroger, who testified that the source of Supremas's quail was not significant to him. But someone could still be confused about a product's origin even if that origin was insignificant.

The Court finds that sufficient evidence exist for a reasonable juror to find that a consumer (Kroger) was actually confused about the origin of Supremas's quail. Thus, this

16

factor weighs in favor of finding a likelihood of confusion for purposes of summary judgment.

    E.   <u>Summary</u>

"The role of the court in reviewing a motion for summary judgment is to determine the ultimate question of whether, in light of the evidence as a whole, there is sufficient proof of a likelihood of confusion to warrant a trial of the issue." *Tana*, 611 F.3d at 775 n.7. After weighing the relevant factors, the Court finds that Manchester Farms has presented sufficient evidence to allow a reasonable juror to conclude that consumers are likely to be confused about the origin of Supremas's quail. Other reasonable jurors may find that there is not a likelihood of confusion. Thus, there is a conflict in the evidence. Summary judgment is not appropriate given the existence of this genuine factual dispute.

**III. Unjust Enrichment**

Manchester Farms seeks an accounting of Supremas's profits under a theory of unjust enrichment. Supremas argues that it is entitled to summary judgment on this claim because there is "no evidence that any customer bought quail from Supremas under the belief that the quail was sourced from Manchester Farms." Mem. of Law in Supp. of Def.'s Mot. for Summ. J. 16, ECF No. 48-1. As discussed above, Manchester Farms presents evidence that Kroger (a customer of both Supremas and Manchester Farms) bought

17

quail from Supremas under the belief that the quail came from Manchester Farms. Thus, Supremas is not entitled to summary judgment on the unjust enrichment claim.

**IV.  Civil Conspiracy and Libel**

Manchester Farms has abandoned its claims for civil conspiracy and libel. Therefore, the Court grants Supremas's motion for summary judgment on the civil conspiracy and libel claims.

CONCLUSION

As discussed above, the Court finds that Supremas is subject to the jurisdiction of this Court and denies Supremas's motion for summary judgment on the Lanham Act and unjust enrichment claims. The Court grants the motion as to the civil conspiracy and libel claims. (ECF No. 48).

IT IS SO ORDERED, this 22nd day of February, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA